(33 App. Div. 422.)

CROSSMAN et al. v. LURMAN et al.

(Supreme Court, Appellate Division, First Department.   October 21, 1898.)

1. SALES — ARBITRATORS — FINALITY OF DETERMINATION — ADULTERATION OF FOOD.
    A contract to sell a specified amount of coffee provided that half should be equal to standard No. 8, and half equal to No. 9, of the Coffee Exchange of the City of New York, and that, if the grading by the selected graders should be unsatisfactory, the matter of grading should be submitted to other persons, to be selected in a specified manner. *Held,* that the action of the arbitrators in regrading the coffee was not final, in so far as the right of the buyer to refuse to accept the coffee on account of its adulteration by being colored was concerned, since, even if the coffee was up to the named grade, if it was adulterated so as to conceal damage, or to make it appear better than it really was, or of greater value, within Laws 1893, c. 661, § 41, the adulteration would be a good defense.

2. EXPERT EVIDENCE—EFFECT OF COLORING COFFEE.
    On an issue whether the artificial coloring of certain coffee had concealed damage, or made it appear better than it really was, or of greater value (Laws 1893, c. 661, § 41), several witnesses testified in the affirmative. A dealer in coffee, who had considerable familiarity with the article, and with the effect produced by coloring matter applied to coffees (which was a common thing), and who had examined certain colored coffee, but was unable to identify it as part of the coffee in dispute, was asked as to the effect of artificial coloring of coffee by the means used in coloring the coffee in dispute, and the party offered to show by him that its effect was to make the coffee appear better than it really was. *Held,* that the evidence was admissible.

3. APPEAL—PREJUDICIAL ERROR—REJECTION OF EVIDENCE.
    The erroneous exclusion of evidence directly bearing on a controverted issue of fact is reversible error, notwithstanding like evidence was admitted in behalf of appellant.

Appeal from trial term.

Action by George W. Crossman and another against Theodor G. Lurman and another to recover damages for a breach of a contract of sale. From a judgment entered on a verdict for plaintiffs, and from an order denying a new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Charles Stewart Davison, for appellants.

Frederick R. Kellogg, for respondents.

RUMSEY, J.   On the 17th of July, 1894, the firm of which the plaintiffs are members sold to the defendants, who are partners in business in Baltimore, in the state of Maryland, 500 bags of coffee, to arrive in New York from Rio de Janiero by the steamship Catania. By the terms of the contract, half of the coffee was to be of a grade

in average to about standard No. 8, and the other half to be about equal in average to standard No. 9, of the Coffee Exchange of the City of New York. The manner in which the coffee was to be graded was prescribed in the contract, and it was further provided that, if the grading by the selected graders should be unsatisfactory, the matter of grading should be submitted to other persons, to be selected in the manner prescribed by contract. The coffee arrived in New York as expected, and it was tendered by the sellers to the buyers. The defendants claimed that about half of the coffee which was claimed to be in grade No. 9 was artificially colored, and was therefore not salable coffee, within the provisions of the public health law of the state of New York; and because of this fact they required that graders should be selected, under those terms of the contract which provided for another grading in case that made by the selected graders was not satisfactory. The new grading was had, and the arbitrator selected under the contract concluded that, although the coffee was artificially colored, yet it practically complied with that provision of the contract which required that it should be about the standard grade No. 9. That conclusion having been reached by him, the plaintiffs tendered the coffee to the defendants, who expressed a willingness to accept so much of it as was uncolored, but refused to accept the colored coffee, for the reason which they had before given. Upon that refusal the plaintiffs caused the coffee to be sold at auction, and they bring this action to recover the difference between the price of the coffee pursuant to the bargain and the amount received at the sale. The defense is that the coffee had been colored in such a way as to appear better than it really was, and of greater value, in contravention of section 41 of the public health law, which forbids the selling or offering for sale of any food adulterated in that way. It will thus be seen that upon the trial the issue between the parties was whether the coffee objected to was in fact adulterated, within the provisions of the statute, in such a way that it could not be legally sold within the state, because, if it was, there can be no doubt that the defendants were justified in refusing to accept it, and that the plaintiffs cannot compel its acceptance, nor recover damages for the refusal of the defendants to take it. Upon the trial this issue was presented to the jury, who found a verdict in favor of the plaintiffs for the amount of their damages. A motion was afterwards made for a new trial, which was denied; and, judgment having been entered upon the verdict, this appeal is taken from the judgment and the order denying the new trial.

At the trial the plaintiffs objected, in the first place, to any examination of the question whether the coffee was in fact adulterated. Their claim was that as the contract provided for a regrading by arbitrators to be selected by the parties in case the original grading was unsatisfactory, and as it appeared that this regrading was had, and the arbitrator had graded the coffee in accordance with the contention of the plaintiffs, the award necessarily operated as a final determination by a selected tribunal that the coffee complied in all respects with the requirements of the contract. It was urged that such an award necessarily involved the proposition that the coffee was not

adulterated, because, if it was adulterated, it could not comply with the terms of the contract. It is unnecessary to examine into the weight to be given to this contention. The same question was presented in another form to the general term of the supreme court in Re Lurman, 90 Hun, 303, 35 N. Y. Supp. 956; and in that case it was concluded that, although the coffee was up to the grade, yet, if it was adulterated, it could not be made the subject of lawful delivery, and upon a suit brought to recover damages for a refusal to accept it the adulteration would have been a good defense. That question was legitimately within the purview of the court in deciding that case, and it must be accepted as a conclusive adjudication upon that subject, and for that reason it is not necessary to further examine this question. It may be said that the determination of the general term in that case was affirmed by the court of appeals upon the opinion of the general term. 149 N. Y. 588, 44 N. E. 1125. The question is thus presented whether the coffee was in fact adulterated, within the definition of the statute of the state. The statute is found in section 41 of the public health law, being chapter 661 of the Laws of 1893. It provides that "no person shall within the state, sell or offer for sale, any adulterated food or drug." The statute then goes on to say that "an article shall be deemed to be adulterated within the meaning of this act * * * if it be colored * * * whereby damage is concealed, or it is made to appear better than it really is, or of greater value." It is plain that under the provisions of this statute the mere fact that an article is colored is not of itself sufficient to make the sale of it illegal. The sale of a colored article is not forbidden, unless by means of the coloring damage to the article is concealed, or the article is made to appear better than it really is, or of greater value. The intent with which the coloring is put upon the article is of no importance. The law deals solely with the effect, and it forbids the sale of the colored article only when, after the coloring shall have been put upon it, one of the effects mentioned in the law shall have been produced. Unless that has taken place, the sale of the article is not illegal.

In this case it was not disputed that the coffee had been artificially colored, and that fact was admitted upon the trial; but whether that artificial coloring had either concealed damage, or made the article appear better than it really was, or of greater value, was the question contested upon the trial, and that was the question presented to the jury. Upon that question a considerable number of witnesses were sworn, both by the defendants and plaintiffs. It was accepted as the serious question in the case, and the one upon which the jury were finally to determine; and, as has been said, it was the question which was finally submitted to the jury by the learned trial judge. The defendants were permitted to offer evidence of persons who had examined this coffee, and were able to testify to its appearance and condition, and to say whether, in their judgment, the coloring matter upon it had the effect to make the coffee appear better than it really was, or of greater value; and several of them testified that, in their judgment, such was the effect produced by the application of the color. The defendants produced also another witness, who was a

dealer. in coffee, and had considerable familiarity with the article, and with the manner of dealing, and with the effect produced by coloring matter applied to coffees.   He had examined certain colored coffee, but was unable to say whether the coffee examined by him was that tendered to the defendants by the plaintiffs.   The defendants sought to show by this witness that the effect of artificial coloring of coffee, especially where the coloring matter used was a ferric salt of a yellow color, as was the case here, would be to enhance its value, or make it appear better than it really was.   The effort to prove these facts by the witness was made in a variety of ways, by several questions, each one of which was objected to by the plaintiffs upon the ground that the question was immaterial and irrelevant, and the evidence was incompetent.   These objections were sustained, and exceptions were taken; and this ruling of the court presents, as we think, an exceedingly serious question.   It was assumed to be, and it undoubtedly was, essential for the defendants, in establishing their case, to show that the use of coloring matter upon the coffee in question was to enhance its value, or make it appear better than it really was.   That was conceded, and such evidence, as applied to the particular coffee, was admitted in every case where it was offered.   The witness whose testimony was objected to and rejected was a man of considerable experience in that trade, who had dealt largely in coffee, and was familiar, not only with the manner of dealing, but with the effect of coloring matter generally upon coffee to which it was applied; and it must be assumed that he was able to say what the general effect in such cases was, of the application of coloring matter to the article.   It must be assumed that no one would attempt to change the color of coffee with a view to make it appear worse, or to diminish its value, or to add to it anything which actually decreased its usefulness, but that whenever anything of that kind was done the act had for its object either actually to make the coffee better, or to make it appear better or of greater value. It needs no argument to establish the fact that such a change in the appearance of the coffee would have no other object, but, as we have said, the intention with which the coffee was colored is not material, within the purview of the statute.   The statute looks not at the intention, but only at the effect which has been produced.   It appears, and is uncontradicted in the case, that the coloring of coffee was not an unusual thing, but, on the contrary, that colored coffees were very largely imported into the United States, and very largely dealt in for purposes of sale in certain portions of this country.   The coloring of coffee, therefore, was quite familiar to dealers; and it must be assumed, as was stated, that the object of it was to improve it, either in actual value or appearance, and not to make it worse.   That being so, it was clearly within the province of a dealer in coffee, who was familiar with colored coffees, to say whether the addition of a yellow coloring substance to the coffee bean would produce the intended effect, and enhance its value.   For that reason this testimony should have been admitted, and the witness should have been permitted to say what was the usual effect of such a coloring of coffee as this; and the ruling was erroneous, and the exception was

properly taken.    But it may be said that the defendants had been allowed to give testimony as to the effect of this coloring matter upon this coffee.    That is very true, but where the question is one of fact, as is the case here, and where that question of fact is the serious and only question in the case, a party should be permitted to give all the testimony that he has upon the litigated question.    It will not do to say that it did no harm to the defeated party to exclude certain evidence which he offers upon a hotly-litigated question of fact because other testimony was admitted in his behalf upon the same question.    He may very well say that, if he had been permitted to give the excluded testimony, the jury would have found with him, and not against him; and for that reason, where the case turns upon a disputed question of fact, and competent evidence bearing upon that question, offered by the defeated party, has been excluded, it is impossible to say that injury was not done to him.    For this error this judgment and order must be reversed.

There are many other exceptions in the case, which it is unnecessary to consider, as they may not arise upon the subsequent trial; but for the error alluded to the judgment and order must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.

