(57 App. Div. 393.)

CROSSMAN et al. v. LURMAN et al.

(Supreme Court, Appellate Division, First Department. January 25, 1901.)

1. ARBITRATION—FINDING—CONCLUSIVENESS.

In an action for refusal to accept coffee claimed to be adulterated, sold under a contract requiring arbitration in case of a dispute, which had been had and decided in favor of plaintiffs, it was not error to refuse to direct a verdict for plaintiffs on the ground that the question of adulteration was settled in their favor by the arbitration, since the decision of the arbitrators was not final.

2. FOOD—ADULTERATED—PROHIBITED SALE—POLICE POWER.

Congress, by exercising its power to regulate commerce, by Act 1890 (26 Stat. 414, c. 839), prohibiting the adulteration of food products, did not supersede or render inoperative Laws 1893, c. 661, § 41, prohibiting the sale of a food product colored or powdered, whereby damage is concealed, or it is made to appear better than it is, since the state law is not a regulation of commerce, but an exercise of the police power.

3. SALES—ADULTERATED COFFEE—REFUSAL TO ACCEPT—WITNESSES—CREDIBILITY—INSTRUCTION.

Where, in an action for refusal to accept coffee claimed to be colored so as to conceal damage, or made to appear better than it really was, and thus within Laws 1893, c. 661, § 41, prohibiting the sale of food so adulterated, plaintiffs called one of the defendants and another as witnesses, who testified that the effect of the coloring was to conceal imperfections in the coffee, which would have been a low-grade coffee had it not been colored, plaintiffs cannot complain of an instruction that, plaintiffs having called such witnesses, the jury were not at liberty to disregard them, but they must be considered credible, since they could not be injured if the jury saw fit to believe that the witnesses were telling the truth with respect to the facts elicited from them.

4. SAME.

An instruction that it was for the jury to say whether, on the proof given, the full extent of the damage was just as apparent to the ordinary, untrained observer after the coffee had been colored as it would have been without the coloring, was proper.

5. SAME.

Every witness having testified that there were damaged beans in the coffee, it was not error for the court to charge that such was the fact.

**6. SAME—TRIAL—EVIDENCE—FORMER TRIAL—STATEMENTS ON—ADMISSIBILITY.**
    Where one of defendants was not a witness, it was not error to exclude
    the stenographer's minutes of his testimony on a former trial, none of
    which was as to whether the coloring of the coffee concealed imperfec-
    tions and made it appear better than it really was, but only bore on his
    motive in defending the action, being an attempt to show that he did so
    because of a decline in the price of colored coffees; it having no bear-
    ing on the litigated fact, and his credibility not being in question.

**7. SAME—DEFENDANT—ADVERSE WITNESS—DISCREDITING.**
    One of the defendants having been sworn by plaintiffs as a witness, it
    was proper to exclude the stenographer's minutes of his testimony on a
    former trial, tending to show that he was induced to refuse the coffee
    and defend the action because of a fall in the price of colored coffees, as
    a result of which he ceased to deal in them, since plaintiffs could not
    use his declarations to contradict and discredit him, and they were not
    material, because the question was not what his motives were, but wheth-
    er he had acted within his rights.

Appeal from trial term, New York county.

Action by George W. Crossman and others against Theodor G.
Lurman and others. From a judgment in favor of defendants, plain-
tiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN,
PATTERSON, and O'BRIEN, JJ.

Frederick R. Kellogg, for appellants.
Charles Stewart Davison, for respondents.

RUMSEY, J. This action was brought to recover damages because
of the refusal of the defendants to accept certain coffee which the
plaintiffs agreed to sell to them. The coffee was tendered to the de-
fendants, and was refused because it did not comply with the con-
tract, which was to sell 500 bags of sound Rio coffee, in grade about
standard 8 and 9 of the Coffee Exchange. The contract contained a
provision for grading, and arbitration in case of a dispute, as to
which it is only necessary to say that there was a dispute, and that
an arbitration was had, and the arbitrators decided that the coffee
was of the grade which the contract called for. The defendants still
refused to accept it, upon the ground that it was colored in such a
way as to be adulterated, within the provisions of section 41 of the
public health law of the state of New York, and that for that reason
they were not bound to take it. The case has been tried three times,
and has been in this court twice before. Upon the first appeal, which
is reported in 33 App. Div. 422, 54 N. Y. Supp. 72, it was held that
the defendants, to justify their refusal to accept this coffee because it
was adulterated, within the provisions of the public health law,
were bound to show not only that it was artificially colored, but that
the effect of the coloring was to conceal damage, or make the coffee
appear better than it really was, or of greater value. No different
rule was established when the case was before this court for the sec-
ond time (46 App. Div. 63, 61 N. Y. Supp. 560), but the judgment from
which that appeal was taken was reversed because of the erroneous
admission of evidence. Upon the trial now under review it was con-
ceded that the coffee was artificially colored, and the only question as
to which there was a dispute was whether the artificial coloring con-

cealed damage, or made the coffee appear better than it really was, or of greater value, and that was the question submitted by the court to the jury. The evidence was sufficient to warrant the conclusion which the jury reached, and the only matters for us to decide are whether any of the exceptions taken by the plaintiffs, and which are here relied upon, are well founded. Those exceptions, so far as it is necessary to examine them separately, are as follows:

It is claimed that the court erred in denying a motion to direct a verdict for the plaintiffs upon the ground that the question of adulteration was settled in their favor by the arbitration which had taken place under the contract. That question is not open for discussion in this court. It was determined by the general term (90 Hun, 303, 35 N. Y. Supp. 956, affirmed in 149 N. Y. 588, 44 N. E. 1125), which conclusion was adopted by this court upon the former appeal (33 App. Div. 422, 54 N. Y. Supp. 72).

But it is claimed that, so far as the sale in the original packages of articles imported into this state is affected by the public health law referred to, that statute is beyond the power of the legislature to enact. The argument is that the sole power to regulate commerce is given to congress; that, with respect to the adulteration of food products, congress has exercised that power, by chapter 839 of the Acts of 1890 (26 Stat. 414); that, the power being exclusive, the action of congress overrides the law of any state passed upon the same subject; and therefore that the state law has become inoperative. If the public health law was intended to be, or could be construed to operate as, a regulation of commerce, there could be no doubt that any action of congress on that subject would be exclusive and would override the state statute. But the fact that congress has the power to regulate commerce does not exclude the exercise of the police power of the state, so far as it may prohibit the bringing into the state of anything which from its nature may not properly be said to belong to commerce, or because its condition is such that it is detrimental to the health of the people of the state. The rule as to the power of the states is laid down in the opinion of Mr. Justice Catron in the License Cases, 5 How. 504–599, 12 L. Ed. 256; and that rule, although it was not adopted by the court in that case, has been approved in subsequent decisions of the supreme court of the United States, and may safely be adopted, as showing the power of the states in that regard. Bowman v. Railway Co., 125 U. S. 465–489, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700; Railroad Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527. In each case whether the result of the adulteration is such as to authorize the legislature to prohibit its sale is a question to be decided with respect to the particular article.

That brings us to an examination of the exceptions taken to the rulings of the court with respect to the admission of evidence. It must not be forgotten that the question for the jury has been brought by the rulings of the court and by the facts admitted on the trial within a very narrow compass. The claim of the defendants is that this coffee had been adulterated, within the provisions of the public health law (Laws 1893, c. 661, § 41; Gen. Laws, c. 25, § 41; Heydecker's Gen. Laws, p. 2000). It was not denied that the coffee was colored

with some coloring substance, and the question was whether the presence of that coloring substance on the coffee concealed damage, or made the coffee appear better than it really was, or of greater value. There was no other question for the jury than that, and the testimony which was presented on the trial raised a dispute only so far as it bore upon that question. The burden of proof of that fact was upon the defendants. That the coffee was colored was conceded. The defendants proved it by one of the plaintiffs, called as a witness for the defendants; and the plaintiffs proved it by one of the defendants, called as a witness for them; so that neither party was in a situation to dispute that fact. The defendants having given evidence tending to show that the coffee was colored, and that the effect of it was to conceal damage and make the coffee appear better and of greater value than it really was, the plaintiffs put upon the stand Lurman, one of the defendants, who gave such testimony as he was called upon to give by them. Lurman answered frankly all the questions he was asked. It appeared from his testimony that he had examined the coffee; that he found it nicely colored with a powder; that he saw a lot of painted coffee; that it was low-grade coffee, containing black, withered, sour, and swollen beans; that it was impossible to tell the brown beans from the black beans, because of the coloring matter upon them, and if it had been uncolored it would have been a low-grade coffee, and the effect of the coloring matter was to conceal imperfections in the grains. He gave other testimony, as to which there seems to have been no particular dispute. After Mr. Lurman had been sworn, one Lee was called as a witness. He was not, so far as appears, at all interested in the matter, and was attending the trial at the request of the defendants, although he had not been sworn by them. With regard to the testimony of Lurman and Lee, the court was requested to charge "that, the plaintiffs having called Mr. Lurman and Mr. Lee as their witnesses, the jury are not at liberty to disregard these witnesses, but these witnesses must be considered to be credible witnesses." This charge was given, and to it the plaintiffs excepted; but it is to be noticed that the exception of the plaintiffs did not adopt the precise words used by the court in its charge, but the exception read, "are not at liberty to discredit these witnesses, but these witnesses must be considered as credible witnesses"; the word "discredit" being used instead of the word "disregard," which was used in the charge. When it is considered that these witnesses were put upon the stand by the plaintiffs to establish facts which they deemed material in the case, and that, so far as appears, they testified frankly as to the facts which the plaintiffs sought to prove by them, it is difficult to see how the plaintiffs were aggrieved by the charge of which they complain. One who puts a witness upon the stand does so to prove his case, and asks such questions as he deems necessary to establish the facts he seeks to prove, and he cannot be injured if the jury see fit to believe that the witness is telling the truth with respect to the facts elicited from him. The charge as given was certainly correct. These witnesses were sworn by the plaintiffs, and out of their mouths the plaintiffs elicited certain facts. It goes almost without saying that the jury were not at liberty to disregard the testimony

of those witnesses. They may not have been called upon to credit all that they said; but they were bound to regard it and consider it to the extent, at least, of coming to a conclusion whether they would adopt it as to the facts sworn to by those witnesses. Clearly, they were not at liberty to disregard it, and the court, in charging as it did, was correct. It is equally clear that they were bound to regard the witnesses as worthy of credit. Lee was the plaintiffs' own witness, and was in no sense adverse, so far as appears. It is well settled that where one puts a witness upon the stand he presents him as a credible witness, and he is not at liberty to say that he is not credible. Pollock v. Pollock, 71 N. Y. 137–152; Thompson v. Blanchard, 4 N. Y. 303–311; Becker v. Koch, 104 N. Y. 394, 10 N. E. 701. The same applied to Lurman when the plaintiffs saw fit to use him as their witness. Becker v. Koch, supra.

The court charged the jury that it was for them to say whether, upon the proof given, the full extent of the damage was, after the beans had been colored, just as apparent to the ordinary, untrained observer as it would have been had the coffee not been colored. I can see no ground for any exception to this charge. It was precisely the question in the case which the jury were bound to pass upon, and it was properly submitted to them.

It is said that the court erred in charging that there were damaged beans in the coffee. As every witness testified to that fact, the objection is not well taken. Even the plaintiff Crossman testified that he found damaged beans, and he picked out some which were there. We have examined the other exceptions taken to the refusals to charge, and we find no error in them.

Neither were there any erroneous rulings with respect to the admission of evidence which can be said to operate to the damage of the plaintiffs. We think it necessary to refer to but one class of the evidence which was excluded. That is to the stenographer's minutes of the testimony given by Lurman and Williams on a former trial. Of course, whatever was said by them in that testimony were declarations of the two defendants, and were competent so far as they were material upon the issue which was presented to the jury in this case. Williams was not sworn as a witness, and therefore his declarations upon the former trial were only material if they bore upon some fact which was litigated upon this trial. The only such fact was whether the coloring of the coffee operated to conceal damage, or make the coffee appear better than it really was, or of greater value. After a careful reading of the testimony of Williams, which was offered in evidence, but which was excluded, and is printed as an appendix to the case, we are unable to find that there is anything in it which bears upon the question litigated before the jury. The only thing as to which he testified with regard to the condition of the coffee was that it was artificially colored. Had that been a disputed question of fact, the exclusion of his evidence upon that point would be something of which the plaintiffs might complain; but, as it was admitted that the coffee was colored, this declaration is not of the slightest importance. The remainder of the minutes consisted of matter bearing upon his motive in defending the action; being an attempt to show that he did

so because of a decline in the price of colored coffees, and that he was himself a dealer in them. In view of the fact that he was not a witness on the trial, and his credibility was not in question, his motives were of no importance, and his declarations were properly excluded. The same thing may be said, substantially, with regard to the testimony of Lurman. It is quite true that Lurman was a witness on this trial, and it is claimed that some of the evidence given on the former trial tended to contradict some of the things he testified to on the trial under review; but no contradiction can be found in those minutes of any fact which was material to the issues which were presented in this case. For these reasons, therefore, the ruling of the court as to these minutes was correct. It is quite possible that that testimony might tend to discredit Lurman, by showing that he was induced to refuse the coffee and defend this action because there was a fall in the price of colored coffees, as a result of which he ceased to deal in them; but, the plaintiffs having put him upon the stand, his declarations were not competent to be used by them to contradict him, and they were not material, because the question was not what were the motives of Lurman, but whether, when he had received the coffee, he had acted within his rights.

Upon the whole case, after careful examination, we cannot see that there was any error, and the judgment must be affirmed, with costs. All concur.